UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO: 21-cr-00015-02 |
| VERSUS | CHIEF JUDGE HICKS |
| EDUARDO LOZANO | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Eduardo Lozano ("Lozano") and two codefendants are charged with one count of conspiracy to possess with intent to distribute methamphetamine and one count of possession with intent to distribute methamphetamine. Doc. 27. The charges stem from a traffic stop of a Nissan Pathfinder ("the SUV") in which Lozano and his codefendants were traveling. Officers obtained consent to search the SUV during the stop, and they found three kilograms of methamphetamine inside. A search warrant was later obtained to search Lozano's phone. That search led to additional incriminating evidence against Lozano.

Before the court is Lozano's Motion to Suppress. Doc. 64. Lozano argues that probable cause was not shown for each of the categories of information searched on his phone, citing United States v. Morton, 984 F.3d 421 (5th Cir. 2021). For the reasons that follow, it is recommended that Lozano's motion be denied.[1]

---

[1] Because the motion challenges only the validity of the warrant for the phone, an evidentiary hearing is not necessary.

**Background Facts**

The following summary of background facts is taken from the affidavit submitted by DEA Task Force Officer Christopher Perry in support of the challenged search warrant. Defendant does not challenge the background facts, which are also summarized in his motion.

On January 4, 2021, a Louisiana State Police trooper stopped the SUV for speeding. The SUV was heading eastbound on I-20 and traveling 84 mph in a 70-mph speed zone. The trooper approached the SUV and saw five occupants inside. He separated the occupants and then interviewed the driver (Guerra), the front seat passenger (a 17-year old), and the backseat passenger (Lozano). Guerra, who did not have a driver's license, said the group was traveling from Dallas to Mississippi with no particular destination in mind. The 17-year old, on the other hand, said the group was heading to Alabama to see family. Lozano claimed the group was traveling to Alabama to take pictures. The trooper did not interview Duarte, who was pregnant and seated in the cargo area with her two-year old child, except to obtain identifying information.

The trooper ran computer inquiries and determined that the SUV was registered to a Carlos Morales in Arlington, Texas. The trooper asked Guerra for consent to search the SUV, and Guerra signed a consent to search form. During a search of the vehicle, the trooper located a gray backpack on the rear passenger-side floorboard. Inside the backpack were three large plastic bags of suspected methamphetamine that had an aggregate weight of roughly three kilograms. The trooper also found approximately 31.7 grams of marijuana in the center console.

Duarte gave a post-<u>Miranda</u> interview. She identified Guerra as the father of her minor child and Lozano as her brother. Duarte said the vehicle belonged to Carlos Morales, her mother's boyfriend, and that the group was making a one-day trip from Dallas to Alabama for Morales on the day in question. Duarte claimed they often made trips for Morales for extra money and that she knew they were in possession of something illegal. Duarte gave written consent to search her phone, and troopers saw text messages between Duarte and Guerra that were consistent with drug trafficking communication. Duarte's phone also contained at least one photograph of Lozano posing with firearms and money.

Guerra stated post-<u>Miranda</u> that he was being paid to deliver the seized methamphetamine for Morales to Mathiston, Mississippi. Guerra explained that he needed the money to pay rent and for his new baby. He also said that he was going to pay Lozano and the juvenile to help with driving and that the two were with him when he picked up the illegal drugs to deliver for Morales. Guerra said this was the third time that he delivered drugs for Morales and that Lozano traveled with him to deliver drugs on a prior occasion.

**The Motion to Suppress**

Lozano seeks to suppress the evidence seized from his cellphone. He concedes that the affidavit in support of the search warrant alleged (1) he was in a car with three kilograms of methamphetamine; (2) Guerra told agents that he (Lozano) knew about the methamphetamine inside the car and had even participated in a drug delivery on a prior occasion; (3) Guerra and Duarte had incriminating text messages on their phones, and (4) Duarte had on her phone pictures of Lozano posing with guns and money. Nevertheless, and relying on the Fifth Circuit ruling in <u>Morton</u>, Lozano claims the search warrant "so

lacked indicia of probable cause" that agents had no basis to search any feature of his phone.

**Law and Analysis**

    **Good Faith**

A motion to suppress evidence discovered pursuant to a search warrant is analyzed under a two-step process. United States v. Sibley, 448 F. 3d 754, 757-58 (5th Cir. 2006). First, the court must decide whether the good-faith exception to the exclusionary rule applies. United States v. Leon, 468 U.S. 897 (1984). The good faith exception arises when an officer's reliance on a defective warrant is "objectively reasonable." Sibley at 757. If the good-faith exception applies, then no further analysis is conducted. If the good faith exception does not apply, then courts consider whether the official who issued the warrant had a substantial basis for concluding that probable cause existed. United States v. Allen, 625 F. 3d. 830, 835 (5th Cir. 2010).

The good faith exception applies to most searches undertaken pursuant to a warrant unless one of the four situations enumerated in Leon removes the warrant from the exception's protection. Leon, 468 U.S. at 923. One of these exceptions is when a search warrant is so lacking in indicia of probable cause that an officer's reliance on it is entirely unreasonable. United States v. Mays, 466 F.3d 335, 343 (5th Cir. 2006). To determine if there was an indicia of probable cause, courts consider "all of the circumstances surrounding the issuance of the warrant" when making the good-faith inquiry. United States v. Pope, 467 F.3d 912, 916 (5th Cir. 2006). The exclusionary rule is designed to deter police misconduct – not judicial errors or misconduct. Leon, 468 U.S. at 916. As the

Supreme Court explained, the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." Id. at 919.

### The Morton Case

Lozano cites United States v. Morton 984 F.3d 421 (5th Cir. 2021) in support of his claim that the warrant was so lacking in probable cause that the agents' reliance on the warrant was unreasonable. In Morton, the defendant was stopped for speeding. After officers smelled marijuana, the defendant gave consent to search his vehicle. Officers found 16 ecstasy pills, a small bag of marijuana, and a glass pipe inside the vehicle, along with various items suggestive of potential child exploitation crimes. Officers arrested the defendant for drug possession, and they requested warrants to search three cellphones that were found inside the vehicle. The affidavit mentioned no concerns about child exploitation but instead requested to search the phone for:

> telephone numbers, address books; call logs, contacts, recently called numbers, recently received calls; recently missed calls; text messages (both SMS messages and MMS messages); photographs, digital images, or multimedia files *in furtherance of narcotics trafficking or possession*. (Emphasis added.)

Id. at n.1. The magistrate judge issued the search warrants and, while searching the photographs on the phones, officers found sexually explicit images of children. Officers obtained additional warrants to further search the phones, and they found nearly 20,000 images of sexually exploited minors.

The defendant was charged with receipt of child pornography. He filed a motion to suppress the evidence seized from his phones, wherein he claimed the affidavits in support

of the first set of warrants failed to establish probable cause to search his phones for additional evidence of drug crimes. The motion was denied.

The Fifth Circuit reversed the district court's ruling. Applying "simple logic," the court found that the affidavit established probable cause to search the defendant's contacts, call logs, and text messages for evidence of drug possession. Id. at 427. The court explained that "[t]o possess drugs, one must have purchased them; contacts, call records, and text messages could all easily harbor proof of this purchase." Id. As to photographs on the phone, however, the Fifth Circuit held that the affidavit failed to establish probable cause for the search. Id.

The court noted that the affidavit mentioned photographs only in connection with statements about the behavior of drug traffickers. Id. at 429. But there was no evidence that defendant was a drug dealer. Id. The Fifth Circuit held that "under these facts and based on the specific language in these affidavits … probable cause was lacking to search [the defendant's] photographs for proof of his illegal drug possession." Id. The court then rejected the Leon good-faith argument, concluding that reasonably well-trained officers would have been aware that searching the digital images on the defendant's phone for drug trafficking-related evidence was unsupported by probable cause, despite the magistrate's approval. Id. at 430.[2]

---

[2] A petition for rehearing en banc is pending in Morton.

### Contacts, Call Logs, and Text Messages

Agents had probable cause to search the contacts, call logs, and text messages in Lozano's phone. The defendant in Morton was a simple drug possessor or user. The court explained that "[t]o possess drugs, one must have purchased them; contacts, call records, and text messages could all easily harbor proof of this purchase." Id. Therefore, by applying "simple logic," the Fifth Circuit concluded that a search of these features in a phone was permissible in simple drug possession investigations. Id.

Here, the affidavit established that Lozano was more than a simple drug possessor. The affidavit stated that Lozano was one of four individuals traveling in a vehicle that contained three kilograms of methamphetamine. Guerra told agents that he was getting paid to deliver the drugs for an individual named Carlos Morales, and that he was going to pay Lozano to help with the driving. Guerra said Lozano was with him when he picked up the methamphetamine to make the subsequent delivery, and that Lozano accompanied him on a drug delivery on a prior occasion. The affidavit thus established probable cause to believe that Lozano was involved in drug trafficking. By simple logic, and consistent with the Morton ruling, agents had a good faith basis to rely on the warrant and search the contacts, call logs, and text messages in Lozano's cellphone.

### Photographs and Videos

Although the Morton opinion precluded the search of a cellphone's photographs in a simple drug possession case (based on the lack of information in the warrant application), it did not do so in the case of a drug trafficking investigation like the one here. In fact, the

Fifth Circuit acknowledged that it "may very well be true" that "criminals often taken photographs of co-conspirators as well as illicit drugs and currency derived from the sale of illicit drugs." Id. at 429. And the court even referenced a prior opinion where it noted that drug dealers send photographs of guns, drugs, and cash to each other. Id. n. 8. The Fifth Circuit simply found that the facts in Morton did not support a finding that the defendant was engaged in drug trafficking and, therefore, there was no probable cause to search the photographs in his phones.

Here, the affidavit contains the exact facts that were lacking in Morton. Lozano was traveling in a car with three kilograms of methamphetamine. Such a large quantity of drugs is strongly indicative of distribution. Guerra told agents that the group was making a one-day trip to deliver the drugs and that Lozano was present when the drugs were picked up for subsequent delivery. Guerra further stated that Lozano was going to be paid to help with the driving and that Lozano accompanied him on drug deliveries on a prior occasion. Also, Duarte's phone contained at least one photograph of Lozano posing with drugs and money. These facts more than established probable cause to believe that Lozano was involved in drug trafficking crimes. Therefore, the agents relied in good faith on the warrant to search the photographs in Lozano's phone.

**Conclusion**

The affidavit provided abundant probable cause concerning Lozano's drug trafficking activities. There was physical evidence, including three kilograms of methamphetamine, text messages on Guerra and Duarte's phones, and the photo of Lozano on Duarte's phone, as well as the incriminating statements by the co-defendants. Given

the sources and volume of evidence, no reasonable agent would have believed the affidavit was so lacking in probable cause that the magistrate judge was deficient in signing it. The <u>Leon</u> good faith exception applies.

Accordingly,

It is recommended that the motion to suppress be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of May, 2021.

Mark L. Hornsby
U.S. Magistrate Judge